IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Helen McCauley,                                         Case No. 3:09CV883

        Plaintiff

    v.                                                      ORDER

SK Hand Tool Corp., et al.,

        Defendants

    This is an employment discrimination case. Plaintiff Helen McCauley brought suit against her former employer and supervisor – defendants SK Hand Tool Corporation (SK Tool) and Bella Keigher – alleging ten causes of action relating to her termination.[1]

    Jurisdiction is proper under 28 U.S.C. § 1332.

    Pending is defendants' motion for summary judgment. [Doc. 19].[2] For the reasons discussed below, the motion shall be granted as to Keigher.

**Background**

    Beginning in 1994, plaintiff worked as a benefits administrator in human resources at SK Tool's manufacturing plant in Defiance, Ohio. She was sixty-eight years old at the time of her termination in March, 2009.

    SK Tool manufactures hand tools in facilities in Defiance and Chicago, Illinois.

---

[1] In her deposition, plaintiff agreed to dismiss her Fifth and Sixth Cause of Action.

[2] On June 30, 2010, SK Tool filed a notice of filing bankruptcy. [Doc. 39]. Pursuant to the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362, I do not rule on the motion as applied to SK Tool. I therefore decide the pending motion only as to Keigher.

In 1994, plaintiff received an employee handbook which outlined the rules and policies for non-union employees. The handbook included a disclaimer indicating that the manual does not create any contractual rights and that employment is terminable at the will of either party. Plaintiff signed and acknowledged on her employment application that the application or any offer of employment would not constitute an employment contract.

In 2000, the company promoted plaintiff to personnel supervisor.[3] In her job as personnel supervisor, plaintiff was "in charge of the Defiance human relations department." [Doc. 29-1, at 1]. Plaintiff described her job duties at her deposition:

> When I started with them, I did a lot of work for Tony Bishop, who was the plant manager. I also started to get all the unemployment, all the Workers' Comp, life insurance, health insurance, any type of benefits, the pensions. Then I started hiring, that came up on me. I started learning the bumping system that they had through the union. I went into negotiations with the company through their union contract. I would help all supervisors out as far as any type of warnings . . . .

[Doc. 31, at 6].

Plaintiff also handled disciplinary warnings and recorded attendance. She "would write up . . . attendance warnings." [Doc. 31, at 7]. Plaintiff was also the supervisor of office personnel at the Defiance plant.

Plaintiff did not, however, handle or have training in payroll tasks. She testified that "[t]here were several occasions when we talked about me learning [how to do payroll], however with all the

---

[3] Plaintiff has moved to strike several paragraphs in the fact section of Keigher's brief. [Doc. 32]. Plaintiff alleges that the Keigher's brief misrepresents the facts by alluding to facts unsupported by the evidence. Keigher responds that "all of the factual allegations made in the [motion] are supported by direct and specific references to either deposition testimony or properly executed affidavits." [Doc. 30]. In ruling on the motion for summary judgment, I have considered only those facts supported by record evidence.

extras that were being put on me, there was no time to be able to learn that. There just wasn't enough feasible time." [Doc. 31, at 60].

SK Tool "began to experience severe financial difficulties early in the year 2008." [Doc. 20, at 1]. "Although a number of steps were taken to address these difficulties, one of the steps the company took was to begin a series of severe reductions in the number of employees in its workforce." [*Id.*]. According to SK Tool CEO and President Claude Fuger, in the two to three years leading up to 2009, the company "went from . . . 60 salaried employees to 29 salaried employees." [Doc. 29-3, at 4].

During plaintiff's employment with SK Tool, Keigher made statements to Kurt Etzler and Diane Kunesh regarding the plaintiff's work performance.

Keigher terminated plaintiff on March 13, 2009. On that day, plaintiff was given a "General Release Agreement." [Doc. 29-4]. The document indicates that Keigher terminated plaintiff in December, 2008. Plaintiff, however, did not leave her job at SK Tool until her termination in March, 2009.

SK Tool and Keigher transferred plaintiff's job responsibilities to other employees including Kunesh, Keigher and Etzler.

At the time plaintiff lost her job, Kunesh and possibly one other person still worked in the office at the Defiance plant.

Kunesh was a payroll clerk. She had worked for SK Tool since 1976 and was sixty years old at the time plaintiff lost her job. She assumed some of plaintiff's duties in addition to her payroll duties from the time plaintiff left until February, 2010.

Keigher is SK Tool's Vice President of Human Resources. She was forty-six years old at the time plaintiff lost her job and began working for SK Tool in 2006. She works in SK Tool's Chicago headquarters. She assumed most of plaintiff's human resources responsibilities including employee benefits.

Etzler was a supervisor and then plant manager at the Defiance plant. He is no longer the plant manager, but performs a variety of tasks including payroll and "little things in H.R." [Doc. 42, at 24]. He also "helps in the plating line up to the engineering." [*Id.*]. It is unclear from the record exactly how old Etzler is, but he is in his forties.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

**Discussion**

Plaintiff's claims against Keigher are: 1) gender discrimination; 2) age discrimination; 3) tortious interference with contract; 4) workplace defamation; and 5) fraudulent misrepresentations.

**I. Discrimination**

Keigher argues that plaintiff's discrimination claims must be dismissed because: 1) plaintiff cannot show that she was qualified for the position in question; and 2) business circumstances compelled a work force reduction, leading to plaintiff's termination.[4]

Plaintiff responds that she was qualified and that she has presented sufficient evidence to overcome summary judgment.

Ohio law prohibits age or gender discrimination in employment. O.R.C. § 4112.02(A) (gender and age discrimination); § 4112.14(A) (age discrimination).

Under O.R.C. § 4112.02(A) it is an unlawful practice for any employer "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Regarding age specifically, § 4112.14(A) provides: "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

---

[4] Defendant also argues that, with respect to age, plaintiff cannot show that Kunesh was "substantially younger," and with respect to gender, plaintiff cannot show that she is "similarly situated" to Etzler. Because I find other factors determinative, I do not reach these contentions.

5

The Ohio Supreme Court has interpreted the term "employer" as used in Chapter 4112 to include individual supervisors and managers. *Genaro v. Cent. Transport., Inc.*, 84 Ohio St. 3d 293, 300 (1999) ("[I]ndividual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment.").

A plaintiff may prove age and gender discrimination through direct or indirect evidence. *E.g.*, *Kohmescher v. Kroger Co.*, 61 Ohio St. 3d 501, 505 (1991). Plaintiff does not present direct evidence of discrimination in this case. I, thus, examine the case under the three-part indirect evidence framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[5]

Under this framework, plaintiff must first establish a prima facie case.

To establish a prima facie case of age discrimination, plaintiff must show she: "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell*, *supra*, 101 Ohio St. 3d at 180.

Similarly, to establish a prima facie case of gender discrimination, plaintiff must demonstrate: "(1) that she was a member of the statutorily protected class, (2) that she suffered an adverse employment action, (3) that she was qualified for the position, and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class." *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App. 3d 46, 54-55 (2007).

---

[5] Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under O.R.C. § 4112 to the extent the terms of the statutes are consistent. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, 179 (2004); *Barker v. Scovill, Inc.*, 6 Ohio St. 3d 146, 147 (1983).

In a work force reduction situation,[6] courts modify the fourth element of a plaintiff's prima facie case. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993). The Sixth Circuit explained that this is necessary because:

> By showing the other elements of a *McDonnell Douglas* case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a prima facie case absent *additional* direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.

*Barnes*, *supra*, 896 F.2d at 1465 (emphasis added); *see also Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 767 (6th Cir. 2004) (applying *Barnes* to age and gender discrimination).

Ohio courts follow the modification of a plaintiff's prima facie case set forth in *Barnes*. *Kundtz v. AT&T Solutions, Inc.*, 2007 WL 949499, *4 (Ohio Ct. App.) (noting that Ohio courts similarly modify the fourth element of a prima facie case in a work force reduction situation); *see also Frantz v. Beechmont Pet Hosp.*, 117 Ohio App. 3d 351, 358 (1996) ("Obviously when a business is in a process of deliberately downsizing for legitimate financial reasons, economies of scale, an inference of discrimination does not automatically arise because one's job is terminated and the job duties redistributed among a reduced work force, even when the person is a member of a distinct age group or gender."); *Atkinson v. Int'l Technegroup, Inc.*, 106 Ohio App. 3d 349, 359 (1995).

---

[6] "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

An employee is "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.*

"The rationale for this [heightened] burden [in work force reduction cases] is that 'an employer's decision to discharge a qualified, older employee should not be considered 'inherently suspicious' because in a [reduction in force] qualified employees are going to be discharged.'" *Kundtz*, *supra*, 2007 WL 949499, *4 (quoting *Ramacciato v. Argo-Tech Corp.*, 2005 WL 315377 (Ohio Ct. App)).

If plaintiff makes out a prima facie case under either standard, the burden then shifts to the employer to submit a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Burdine*, *supra*, 450 U.S. at 253; *Barker*, *supra*, 6 Ohio St. 3d at 148.

Finally, if defendant presents a nondiscriminatory reason, the burden shifts back to plaintiff to show that the employer's rationale is a pretext for unlawful discrimination. *Burdine*, *supra*, 450 U.S. at 253; *Barker*, *supra*, 6 Ohio St. 3d at 148.

The gravamen of plaintiff's age and gender discrimination claims is that Keigher, while retaining male and younger employees to do plaintiff's job, fired plaintiff. Keigher contends that plaintiff has failed to make out a prima facie case on either claim.

### A. Age Discrimination

The first two elements of plaintiff's prima facie age discrimination claim are undisputed. Plaintiff, age sixty-eight, is a member of the statutorily protected class and Keigher laid her off.

Plaintiff, however, has failed to present evidence to satisfy the fourth element of her claim. Plaintiff points to three younger individuals who took on portions of her job duties – Kunesh, Keigher and Etzler.

This case involves a work force reduction. Fuger testified that over the course of a two to three year period, SK Tool's salaried work force was cut in half.

No one was hired to "replace" plaintiff. Rather, her job duties were redistributed to other employees – Keigher, Etzler and Kunesh.[7] Plaintiff has failed to present any "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled [her] out . . . for discharge for impermissible reasons." *Barnes*, *supra*, 896 F.2d at 1465. Rather, Fuger stated that even when the company cut its salaried workforce in half, "Ms. McCauley was among the last, if not the last, salaried employee affected by these layoffs." [Doc. 20, at 2].

Because plaintiff has failed to submit evidence that Keigher singled her out based on her age, summary judgment is granted to Keigher on this claim.[8]

### B. Gender Discrimination

As with her age discrimination claim, there is no dispute about the first two elements of plaintiff's gender discrimination claim. Plaintiff is a member of the statutorily protected class, and suffered an adverse employment action – termination.

---

[7] Plaintiff argues that Keigher, Kunesh and Etzler combined make "over $145,000.00 not counting benefits, compared to Plaintiff's annual salary of $40,000.00." [Doc. 29, at 22]. This comparison is unhelpful. What plaintiff does not acknowledge is that the three individuals who took on her job responsibilities took them on *in addition* to their own jobs.

[8] Plaintiff also has not shown that she was qualified for any remaining job.
First, most of plaintiff's human resource responsibilities were transferred to Keigher, the Vice President of Human Resources. Plaintiff has not presented evidence that she was qualified for that position.
Second, Kunesh remained employed at the Defiance plant to operate the payroll. Plaintiff admitted in her deposition that she did not have training in how to operate payroll.
Third, Etzler now does payroll, "little things in H.R." and "helps in the plating line up to the engineering." [Doc. 42, at 24]. He performs operational tasks in addition to human resource tasks.
While plaintiff argues that she "could perform adequately all human relations jobs at [SK Tool] for which she was trained", [Doc. 29, at 17], and that she had "broad based skills in human resources," [*Id.* at 18], all three individuals named had experience in payroll. Plaintiff, by her own admission, did not have experience with payroll tasks. Plaintiff has thus not presented sufficient evidence that she was qualified for any remaining position.

Plaintiff points to a single male employee – Kurt Etzler – as evidence of her gender discrimination claim. Etzler works in the Defiance plant and "does payroll, helps [Keigher] from little things in H.R., he helps with the employees, schedule employees' times, he helps in the plating line up to the engineering." [Doc. 42, at 24]. At plaintiff's deposition she stated that Etzler was the plant manager at the time Keigher fired her, and that Etzler had previously been a supervisor.

Keigher testified that there is no longer anyone working solely in human resources in Defiance. Etzler now performs payroll and some human resources duties to help Keigher, and in addition to his other duties at the plant.[9]

As with her age discrimination claim, plaintiff's gender discrimination claim fails because she was not replaced and she has not provided any evidence "tending to indicate that the employer singled [her] out . . . for discharge", *Barnes*, *supra*, 896 F.2d at 1465, because of her gender.

Keigher's motion for summary judgment on plaintiff's gender discrimination claim is, thus, granted.[10]

---

[9] As discussed above, additionally, plaintiff has not shown that she is qualified for Etzler's job.

[10] Some courts analyze reduction in force cases under the second and third prongs of the *McDonnell Douglas* test – treating reduction in force as the legitimate, non-discriminatory reason and shifting the burden to back plaintiff to show that the reduction in force is pretext.
To meet the burden of showing pretext, a plaintiff "would have to produce evidence that the decisionmakers' explanations were false and that gender or age discrimination was the reasl reason for the elimination of her position." *Gragg*, *supra*, 373 F.3d at 768 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)).
In this case, even assuming *arguendo* that plaintiff has established a prima facie case of either age or gender discrimination, plaintiff has presented no evidence to show that Keigher's decision to fire plaintiff and eliminate her position was merely pretextual rather than based on legitimate financial reasons and an overall work force reduction. *See Mendlovic*, *supra*, 173 Ohio App. 3d at 56 (citing *Boggs v. Scotts Co.*, 2005 WL 647560 (Ohio App.)).

## II. Tortious Interference

Plaintiff claims that Bella Keigher tortiously interfered with plaintiff's employment contract. She asserts that the Employee Handbook [Doc. 31, at 60] created an implied contract. Keigher argues that the disclaimer in the handbook as well as plaintiff's knowledge of it does not create a contract. Keigher argues that because no contract exists, summary judgment should be granted.

Under Ohio law, to state a claim for tortious interference with contract, a plaintiff must show: 1) the existence of a contract; 2) the wrongdoer's knowledge of the contract; 3) the wrongdoer's intentional procurement of breach; 4) lack of justification; and 5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176 (1999). Proof of a breach of contract is not an essential element of a claim for tortious interference with a contract. *Am. Mar. Officers v. Marine Eng'rs Beneficial Ass'n, Dist. No. 1,* 503 F.3d 532, 536 (6th Cir. 2007) (citing *Dougherty v. Parsec, Inc.,* 872 F.2d 766, 770 (6th Cir. 1989)).

Generally, employee handbooks and statements of policy will not affect the employment-at-will rule. Under the implied contract exception, "a handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing." *Strasser v. Fortney & Weygandt, Inc.*, 2001 WL 1637502, *2 (Ohio Ct. App.) (citing *Latimore-Debose v. BVM, Inc.,* 1996 WL 157357 *7 (Ohio Ct. App.)).

In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies, which creates no rights and obligations. *Id.* Most importantly for the case at hand, where a handbook contains a disclaimer, absent fraud in the inducement, the disclaimer precludes the use of the handbook to demonstrate an implied contract. *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108, 110 (1991).

11

Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employment handbook. *Strasser*, *supra*, 2001 WL 1637502, *2. In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to his or her detriment. *ABM Farms, Inc. v. Woods.*, 81 Ohio St. 3d 498, 502 (1998).

In this case, the employee handbook contained a disclaimer:

> This manual is not a statement of contractual rights is not intended to give rise to any right to employment, continued employment, or any benefit of employment. This manual is a statement of general policy and does not affect the employment relationship between the Company and its employees, which is employment for an indefinite period and terminable at the will of either party with or without notice and with or without cause at any time.

[Doc. 31, at 60].

The first element of tortious interference with a contract requires the existence of a contract. The employee handbook indicates that all non-union employees, including plaintiff, are at-will employees and that no implied contract exists. Plaintiff acknowledges that she was aware of the language in the handbook at the beginning of her employment. I, therefore, conclude that the disclaimer in the employee handbook precludes any finding of an implied contract and plaintiff's acknowledgment of the disclaimer at the time it was signed shows that there was no fraud in the inducement. *See Strasser*, *supra*, 2001 WL 1637502, *2.

Because there is no contract, I must grant summary judgment to Keigher on the tortious interference with contract claim.

### III. Workplace Defamation

Plaintiff claims that Keigher made certain defamatory statements about her to Kunesh and Etzler, employees at SK Tool. Keigher argues that the statements were opinions and cannot be a basis for a defamation action. Keigher also argues that the communications were good faith communications – made between two employees about plaintiff's performance – and therefore a qualified privilege exists that defeats any claim of defamation.

To prevail on a defamation claim, whether libel or slander, a plaintiff must prove: 1) a false statement; 2) about the plaintiff; 3) was published without privilege to a third party; 4) with fault of at least negligence on the part of the defendant; and 5) the statement was either defamatory per se or caused special harm to the plaintiff. *Gosden v. Louis*, 116 Ohio App. 3d 195, 206 (1996). Truth is an absolute defense against a claim of defamation. *Shifflet v. Thomson Newspapers (Ohio), Inc.*, 69 Ohio St. 2d 179, 183 (1982).

A communication made in good faith between an employer and an employee or between two employees concerning the conduct of a third employee concerning a matter of common interest is qualifiedly privileged. *Gray v. Gen. Motors Corp.*, 52 Ohio App. 2d 348, 351 (1977). Where a qualified privilege exists, the plaintiff must show actual malice in order to recover for defamation. *Id*. A finding of malice in the context of defamation requires a clear and convincing showing that the defendant knew the statement was false or acted with reckless disregard as to the statement's truth or falsity. *Jacobs v. Frank*, 60 Ohio St. 3d 111, 115 (1991).

I find that the statements made by Keigher to Etzler and Kunesh were made between employees. Keigher had a common interest with both Etzler and Kunesh regarding the work performance of the plaintiff. Because the statements were made to other employees regarding

plaintiff's job performance, I find that there is a qualified privilege. *Gray*, *supra*, 52 Ohio App. 2d at 351. I, finally, conclude that there is no evidence showing actual malice directed towards plaintiff.

I therefore grant summary judgment to Keigher on the defamation.

### IV. Fraudulent Representations

Plaintiff claims that Keigher made fraudulent representations during plaintiff's termination.

A claim of common-law fraud requires proof of: 1) "a representation or, where there is a duty to disclose, concealment of a fact"; 2) "which is material to the transaction at hand"; 3) "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred"; 4) "with the intent of misleading another into relying upon it"; 5) "justifiable reliance upon the representation or concealment"; and 6) "a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 49 (1991).

The statements plaintiff alleges are fraudulent are written statements in the "General Release Agreement" [Doc. 29-4]. The document indicates that Keigher terminated plaintiff in December, 2008, while her actual termination date was not until March 13, 2009.

Keigher argues that there could be not have been any reliance, nor could there have been any damage resulting from that reliance because the relationship between the plaintiff and defendant ended when the statements were given. Plaintiff argues that because the termination agreement had a false date of departure, that false representation harmed her.

Plaintiff's argument is not well taken. Even though the date of departure on the termination agreement was not the same as the actual date, plaintiff was not subsequently harmed. She continued to work at SK Tool, and continued to earn her salary during the time between December, 2008 and March 13, 2009. On March 13, 2009, when she signed the termination agreement, Keigher told her

that it would be her last day at SK Tool. Plaintiff never returned to SK Hand Tool after she signed the termination agreement.

I, therefore, conclude that because: 1) no information given to plaintiff on the day of her termination that would result in any reliance, and 2) plaintiff suffered no injury as a result of the misrepresentation, summary judgment is granted to Keigher on this claim.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT the motion for summary judgment [Doc. 19] be, and the same hereby is granted as to Keigher.[11]

So ordered.

s/James G. Carr
U.S. District Judge

---

[11] As noted at the outset, pursuant to the automatic bankruptcy stay, I do not rule on the pending motion as it relates to SK Tool.